UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DARIUS MCCOLLUM,

                              Plaintiff,

v.

CITY OF NEW YORK, NEW YORK DEPARTMENT OF CORRECTION, NEW YORK CITY POLICY DEPARTMENT, AND THE HONORABLE BETTY WILLIAMS

                              Defendants.

**MEMORANDUM AND ORDER**
16-CV-5272 (LDH)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

    Plaintiff Darius McCollum, proceeding pro se, brings the instant action against Defendants the City of New York, the New York State Department of Corrections ("DOC"), the New York City Police Department ("NYPD"),[1] and the Honorable Betty Williams, asserting claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and New York City Human Rights Law ("NYCHRL"). By order dated December 5, 2016, Plaintiff was granted leave to proceed in forma pauperis ("IFP"). Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

---

[1] Claims against the NYPD and DOC can only lie against the City of New York. See *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (citing *Wray v. City of New York*, 340 F.Supp.2d 291, 3030 (E.D.N.Y.2004) (quoting N. Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except were otherwise provided by law."))). Accordingly, any claims against the city agencies are dismissed.

**BACKGROUND**[2]

On November 11, 2015, Plaintiff was arrested for "pilfering a bus with no passengers." (Am. Compl. ("Compl.") 2, ECF No. 6.) At the time of his arrest, an anti-crime officer on the scene recognized Plaintiff and informed a uniformed officer that Plaintiff was "mental and had a long history of this." (*Id*. 4.)

Plaintiff was subsequently taken to the 78th Precinct. (*Id*.) Plaintiff alleges that one of the detectives specifically asked whether Plaintiff suffered from a mental health problem to which Plaintiff responded by indicating that he suffered from Asperger's Syndrome, with Excessive Compulsive Obsession. (*Id*.) At the precinct Plaintiff was interrogated but was not Mirandized, nor did he sign a waiver of his *Miranda* rights. (*Id*.) Plaintiff was subsequently transported to Central Booking, where he suffered a "mental relapse" and "was taken to the hospital for anxiety attacks." (*Id*.) At some point, Plaintiff was arraigned in Brooklyn Criminal Court. (*Id*.) Plaintiff complains that "instead of being sent to either Mental Health Court, or to a Mental Health facility," Plaintiff "was given bail of $100,000.00 and sent to Riker's Island." (*Id*.) Plaintiff was later offered a plea deal of five to ten years in prison. (*Id*.)

According to the complaint, the City of New York is punishing Plaintiff for criminal conduct that is a direct result of his mental disability. (*Id*. at 2.) As Plaintiff alleges, it is "common for individuals with Asperger's disorder to develop an obsessive component." (Pl.'s Aff. Opp. Defs.' Mot. ("Pl.'s Opp.") 3, ECF No. 66.) In the case of Plaintiff, his condition has

---

[2] The following facts are taken from the amended complaint and Plaintiff's opposition papers, and are assumed to be true for the purposes of this memorandum and order. See *Aponte v. Buono*, No. 11-CV-1077, 2011 WL 6812924, at *3 (E.D.N.Y. Dec. 28, 2011) (considering new facts alleged in a pro se plaintiff's opposition papers on a motion to dismiss as the new factual allegations "effectively amended" complaint); *Philippeaux v. United States*, No. 10-CV-6143, 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011) ("While a brief is not the appropriate mechanism to amend a complaint, given plaintiff's pro se status, we review the [second amended complaint] and plaintiff's opposition to the motion to dismiss liberally and address all of his allegations."). Citations to the complaint and Plaintiff's opposition refer to the pagination assigned by the Court's ECF system.

resulted in "an extreme obsession . . . with trains and buses," over which he is powerless, and which causes him to commit nonviolent crimes involving public transit. (*Id*. 2; Compl. 1.) Although Plaintiff maintains that there is no cure for Asperger's Syndrome, he alleges that psychiatric treatment is available to "address different characteristics of the disorder." (Pl.'s Opp. 3.) Plaintiff further alleges that his continued incarceration would not be beneficial to the treatment of his mental health condition and resulting conduct because he requires behavior modification therapy to prevent recidivism. (*Id*. 4.)

Plaintiff also suffers from hearing loss and is in need of hearing aids. (Compl. 5.) Plaintiff's attorney in his criminal case repeatedly apprised the criminal court that "Plaintiff cannot understand or participate in the Court proceedings (much less assist in his defense) because he cannot hear and has not been given hearing aids." (*Id.* 6.) According to Plaintiff, his causes of action are non-grievable. (*Id*. 3.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so,

3

it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting Twombly, 550 U.S. at 555).

## DISCUSSION

### I.  ADA and Rehabilitation Act

Title II of the ADA protects individuals with disabilities from discrimination in government programs and activities. *See Mary Jo. C. v. New York State and Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013) ("The ADA aims 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' . . .[in] public services, programs, and activities." (quoting 42 U.S.C. § 12101(b)(1))). Specifically, the ADA provides that "no qualified individual with a disability

4

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Weixel v. Bd. of Educ. of City of New York*, 287 F. 3d 138, 146 (2d Cir. 2002) (quoting 42 U.S.C. § 12132). The Rehabilitation Act similarly "provides that no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance." *Id.* Courts in this circuit analyze claims asserted pursuant to the ADA and the Rehabilitation Act in tandem. *See Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 2003) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

To survive a motion to dismiss, a plaintiff must allege that he has a disability as defined by statute, is otherwise qualified for the benefit that he was denied, and was denied the benefit by reason of his disability.[3] *Weixel*, 287 F.3d at 146-47. The rationale for the final requirement is driven by the statutes' larger aims. That is, "[b]ecause the purpose of the ADA and the Rehabilitation Act is to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied, there can be no claim under these statutes without an allegation of disparate treatment." *Maccharulo v. New York State Dept. of Correctional Services*, No. 08-CV-301, 2010 WL 2899751, at *8 (S.D.N.Y. July 21, 2010).

In their motion to dismiss, Defendants do not take aim at Plaintiff's allegation that he is disabled or that he is qualified for government benefits and services. Rather, Defendants urge

---

[3] The Rehabilitation Act imposes the additional requirement, not at issue here, that the plaintiff allege that the defendant receives federal funding. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding.")

5

dismissal on the grounds that Plaintiff's complaint does not include any allegation from which the Court could plausibly infer that the conduct at issue occurred because of Plaintiff's disability. (Def.'s Mem. 7.) The Court agrees.

Plaintiff's claims are premised on the notion that his arrest and imprisonment were violative of the ADA and the Rehabilitation Act, which required that he instead be hospitalized in light of his long-known Asperger's syndrome diagnosis. (*See generally* Compl. 4–5.) Notably, Plaintiff does not allege that, in the normal course, persons without disabilities who engage in criminal conduct avoid arrest and incarceration. Rather, he alleges that the existence of his mental health condition required Defendants to operate outside of the normal course. (Compl. 4.) In other words, Plaintiff's true complaint is "not that he was treated differently, but the he *should have been* treated differently." *Sims v. City of New York*, 2018 U.S. Dist. LEXIS 212966 at *8 (S.D.N.Y. Dec. 17, 2018) (emphasis in original). This sort of complaint is simply not cognizable as a discrimination claim under the ADA or the Rehabilitation Act. *See Maccharulo*, 2010 WL 2899751, at *4-5 (dismissing ADA and Rehabilitation Act claims on the grounds that the plaintiffs, as administrators of the estate of a deceased former inmate, failed to plead facts sufficient to demonstrate that the decedent was treated differently than non-disabled persons who exhibited the same behaviors). In the absence of any allegation that he was treated differently than others who committed criminal conduct and that the disparate treatment occurred because of his mental illness, Plaintiff's claims must fail.[4]

---

[4] Plaintiff does not expressly assert a claim for discrimination under the Equal Protection Clause of the United States Constitution. In light of Plaintiff's pro se status, the Court notes that, if asserted, such a claim would fail for the same reasons articulated with respect to Plaintiff's ADA and Rehabilitation Act discrimination claims. *See Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) ("To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations[.]").

## II.   Failure to Give Miranda Warnings

Defendants press that any claim for failure to deliver Miranda warnings must be dismissed because Plaintiff has no constitutional right to be Mirandized before being questioned. (Defs.' Mem. 16-17.)  The Court agrees.  An interrogator's failure to inform a plaintiff of his rights under *Miranda v. Arizona* "does not, without more, result in § 1983 liability. While a defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive *Miranda* warnings." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998); *Leogrande v. New York*, 08-CV-3088, 2013 WL 1283392, at *9 (E.D.N.Y. Mar. 29, 2013) ("It is well settled that the mere failure to read a suspect his *Miranda* warnings is not a constitutional violation in and of itself, and is therefore not the basis for a Section 1983 claim.").  Accordingly, any Fifth Amendment claim on this ground fails.

## III.   Deliberate Indifference to Medical Needs

Defendants urge the Court to dismiss Plaintiff's deliberate indifference claim for failure to exhaust as required by the Prisoner Litigation Reform Act of 1995 (the "PLRA").  Because Plaintiff's claim relates to the conditions of his custody, it could, presumably, be subject to the provisions of the PLRA which provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[F]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement" and thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).  However, "a district court still may dismiss a complaint for failure to

7

exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id*. The Court notes that Plaintiff alleges that his claims are non-grievable, which suggests that Plaintiff did not avail himself of administrative remedies under the mistaken belief that he could not. (Compl. 3.) However, in light of Plaintiff's pro se status, the Court declines to dismiss Plaintiff's claim for failure to exhaust, and, instead, evaluates the sufficiency of his allegations on the merits.

"To establish an unconstitutional denial of medical care, a prisoner must prove deliberate indifference to his serious medical needs.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation and modification omitted). Successful assertion of a claim for deliberate indifference requires a plaintiff to allege facts sufficient to satisfy both the objective and subjective prongs of the standard. *Id*. *First*, "the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Id*. "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019). *Second*, the plaintiff must allege deliberate indifference, or that the "charged official act[ed] with a sufficiently culpable state of mind." *Hathaway*, 99 F.3d at 553. The required state of mind "is the equivalent of criminal recklessness; namely, when the prison official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Defendants urge dismissal of Plaintiff's deliberate indifference claim on the grounds that the complaint fails to allege that Plaintiff suffers from an objectively serious medical condition. Not necessarily so. (*Id*. 11.) According to the complaint, Plaintiff suffers from Asperger's syndrome and hearing loss. While these conditions could constitute serious medical conditions

8

for purposes of a claim for deliberate indifference to medical needs, Plaintiff's allegations here fail to demonstrate that his conditions rise to the level necessary to state a claim for deliberate indifference. Plaintiff alleges that he suffers from Asperger's Syndrome, with Excessive Compulsive Obsession, which causes him to obsess over buses and trains, and commit crimes involving public transit. (Pl.'s Opp. 1–2, 4.) With respect to his hearing loss, Plaintiff alleges only that he is in need of hearing aids, and has apprised his attorney and the criminal court of that fact. (Compl. 5–6.) Absent from the complaint is any allegation that "the denial of treatment could result in further significant injury or the unnecessary and wanton infliction of pain." *Abreu v. Lipka*, 778 F. App'x 28, 31–32 (2d Cir. 2019) ("A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." (quoting *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). As pleaded therefore, these conditions are insufficient to constitute serious medical conditions as required to save Plaintiff's claims.

      Moreover, even if the Court were to conclude that Plaintiff's conditions, as pleaded, were sufficient to satisfy the objective prong of his claim, Plaintiff's claim would nonetheless fail because he has not alleged facts sufficient to satisfy the subjective prong with respect to either condition. As to Plaintiff's claim regarding his Asperger's Syndrome, although Plaintiff alleges that the field detectives at the precinct were aware of his condition, he does not allege facts sufficient to demonstrate that they were indifferent to it. (Compl. 4.) Interestingly, Plaintiff does not allege that his condition was left untreated at either the precinct, or subsequently on Rikers Island, or otherwise disregarded by officers. Rather, Plaintiff alleges only that he was taken to prison rather than a mental health facility. (*Id*.) Likewise, with respect to the alleged denial of hearing aids, Plaintiff alleges only that the court in his criminal case, the Honorable Betty

9

Williams was aware of his need. (*Id*. 6.) Moreover, even if Judge Williams was required to provide hearing aids to Plaintiff, a conclusion that the Court does not reach, she would be immune from suit for any alleged failure to do so.[5] *See Tapp v. Champagne*, 164 F. App'x 106, 107 (2d Cir. 2006) ("The law affords judges absolute immunity from personal liability for acts 'committed within their judicial jurisdiction,' however erroneous the act and regardless of motivation."); *see also Sundwall v. Leuba*, 28 F. App'x 11, 12–13 (2d Cir. 2001) ("It is . . . well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." (internal quotations and modifications omitted)). Moreover, Plaintiff has not identified a single Department of Corrections employee who was aware, or should have been aware of Plaintiff's condition; or who denied Plaintiff hearing aids despite his or her awareness of Plaintiff's need. Nor has Plaintiff pleaded facts sufficient to demonstrate that he was treated for his hearing-related condition and thus a reasonable person in any Defendant's position would have been aware of his need for hearing aids.[6] Plaintiff's claims must therefore fail.

\*    \*    \*

Because Plaintiff has failed to sufficiently allege any constitutional violation, Plaintiff's claim against the City of New York for *Monell* liability must fail. *Pitchell v. Callan*, 13 F.3d

---

[5] It should also not go without saying that Judge Williams was never served, and the complaint should be dismissed against her on those grounds. (*See* ECF No. 23 (returning summons addressed to Judge Williams as she no longer works in the courthouse).)

[6] Additionally, to the extent that Plaintiff purports to assert a claim a Sixth Amendment claim for denial of a fair trial based on his lack of hearing aids in court, such a claim fails. Plaintiff's complaint is devoid of facts demonstrating that his trial has concluded or that any alleged denial of hearing aids impacted the results of his prosecution. *See Martin v. Merola*, 532 F.2d 191, 194 (2d Cir. 1976) ("Until the state prosecutions have been concluded, it is simply impossible to make any reasoned evaluation of plaintiffs' claim that they have been deprived of the opportunity to secure a fair trial by reason of the defendants' actions. Such a claim requires more than the mere speculation of damages contained in plaintiffs' complaint; it requires a showing that plaintiffs have in fact been denied their due process rights."); *Rosenberg v. Martin*, 478 F.2d 520, 525 (2d Cir. 1973) ("In order to recover damages for the deprivation of the right to a fair trial, a plaintiff must show not merely that the police engaged in conduct which 'exceeded the limits of proper police procedure' and 'might have affected his right to a fair trial,' as the judge instructed, but that the improper conduct in fact had that result.").

10

545, 549 (2d Cir. 1994) (stating that if there was no constitutional injury inflicted on the plaintiff "it is inconceivable that the City could be liable to [the plaintiff].")

Moreover, having dismissed all of the federal claims in this action, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's claims under the NYSHRL and the NYCHRL claims pursuant to 28 U.S.C. § 1367(c)(3). *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cr. 2008))); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]"). These claims are therefore dismissed without prejudice for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED, and the complaint is dismissed in its entirety.

In light of his pro se status, Plaintiff is granted leave to file an amended complaint within 30 days from the entry of this memorandum and order. *See Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000). The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this memorandum and order. Failure to file an amended complaint within 30 days, as directed by this memorandum and order, will result in dismissal of Plaintiff's case for failure to prosecute.

SO ORDERED.

Dated: Brooklyn, New York  
     November 25, 2020

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge